## HALLIE A. HIDALGO ET AL. v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided April 23, 1910.

**1.—Master and Servant—Fatal Injuries by Servant—Liability of Master.**

In order to render a master liable for fatal personal injuries inflicted by his servant, the injuries must have been inflicted by his servant in the line of his duty and in the pursuance of his master's business. When the servant turns aside, for however short a time, from the prosecution of the master's work and engages in the doing of an act not in furtherance of the master's business but to accomplish some purpose of his own, whether malicious or otherwise, the master is not responsible for such action.

**2.—Same.**

Evidence considered, and held to warrant the trial court in instructing a verdict for the defendant in a suit against a railroad company for damages for fatal injuries inflicted by its depot watchman upon a third party in a difficulty growing out of the performance of his duties by the watchman, the difficulty occurring at a place not on defendant's premises and at a time when the watchman was not in the discharge of his duties as such.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Smith, Crawford & Sonfield* and *Jno. L. Little,* for appellant.—There being sufficient evidence to support the finding that defendant's employe, Phillips, while acting within the scope of his employment killed the deceased, the husband and father of appellants, without justification, the court erred in directing a verdict for the defendant. Lee v. International & G. N. R. Co., 89 Texas, 588; Joske v. Irvine, 91 Texas, 581; St. Louis Gunning Co. v. Wanamaker, 90 S. W., 740; Lamberida v. Barnum, 90 S. W., 698; Cleveland v. Smith, 102 Texas, 490; Galveston, H. & S. A. Ry. Co. v. Garrett, 44 Texas Civ. App., 406.

*Terry, Cavin & Mills* and *F. J. Duff*, for appellees.—The evidence having shown an independent act of Phillips outside of and beyond the scope of his authority and employment and in nowise connected with his duty or employment; and further having shown that said assault was made by said Phillips on the deceased after office hours,

and after all parties had closed their day's labor and gone to their hotel, and was the result of a quarrel between Phillips and the deceased, the court did not err in instructing a verdict for the defendant. International & G. N. R. Co. v. Cooper, 88 Texas, 608; International & G. N. R. Co. v. Anderson, 82 Texas, 520; Lipscomb v. Houston & T. C. Ry. Co., 95 Texas, 19; Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas, 136; Kincade v. Chicago, M. & St. P. Ry. Co., 14 Am. & Eng. R. R. Cases (N. S.), 559, notes, pages 562-563.

McMEANS, ASSOCIATE JUSTICE.—This is a suit by Mrs. Hallie A. Morris, formerly the wife of U. S. Hidalgo, joined by her husband, Fred Morris, and Virgil and Roy Hidalgo, who were children of the said U. S. Hidalgo, against the Gulf, Colorado & Santa Fe Railway Company for damages growing out of the death of said U. S. Hidalgo.

Plaintiffs alleged that Charlie Phillips was in the employ of the defendant in the capacity of watchman at Saratoga and was on duty at the time of the killing of Hidalgo, and had been in the employ of the company for some time. That it was within the scope of the employment and under his contract with defendant to watch defendant's warehouse, depot and depot grounds at Saratoga station, and to protect the same and prevent persons from going into said warehouse or from taking goods therefrom, or from going on or remaining on or about said premises or interfering in any way with any of the property thereon belonging to or in the keeping of defendant, and to inquire into and determine the authority or right of any person found on the premises, or to go into the warehouse, or to take, handle or interfere with any property belonging to or in possession of the defendant. That in general, his duties were to look after and protect defendant's property, as such duties are usually implied and understood to be done by a watchman.

That U. S. Hidalgo was a teamster at Saratoga and hauled freight for a living. That on the evening of the killing, Hidalgo had arranged with defendant's freight agent at Saratoga to remove certain freight from the warehouse, depot and depot grounds, and while removing the articles of freight, Phillips, while acting within the scope of his employment, questioned Hidalgo's right to go on the premises and remove the freight; and while the said Hidalgo was peaceably endeavoring to show the said Phillips that he had a right to be on the premises and to take freight, and while the said Phillips was acting for the defendant in determining Hidalgo's right to be there and move the freight, the said Phillips made an unwarranted, intentional, negligent, reckless and wanton assault upon the body of the said Hidalgo, shooting him with a pistol and inflicting on him serious bodily injuries which directly and proximately caused his death on said date.

By supplemental petition plaintiffs alleged that Phillips was a notorious drunkard and had a reputation well known in that community as a desperate and reckless character, and defendant knew, or by the exercise of ordinary care would have known, such reputa-

tion, which made him unfit for the work in which he was then engaged for the defendant, and by his negligence and recklessness in the discharge of his duty he fatally injured Hidalgo and was the direct and immediate cause of his death.

Defendant answered by general denial and pleaded specially that if Hidalgo was killed by Phillips that the killing was not done in connection with or furtherance of any business of defendant committed by it to Phillips' charge, or on the premises of defendant, or while Phillips was acting for or as the agent of defendant, but that the killing was the result of a quarrel between Hidalgo and Phillips, and was not in any way connected with the duties being performed at the time by Phillips for the defendant.

The trial court, after hearing the evidence, instructed the jury to return a verdict for defendant, which was accordingly done, and from the judgment rendered thereon the plaintiffs° have prosecuted this· appeal.

The evidence introduced at the trial is substantially as follows: Hidalgo was a teamster engaged in hauling freight from Saratoga to Batson. Phillips was employed by the railway company as a watchman at its depot and yard at Saratoga, and his duties under his employment, as testified to by the witness Sandal, were as follows:

"Mr. Phillips was special officer or watchman, and looked after and assisted in taking care of the railroad property. He was guarding the express also, and saw that the people did not get off from the depot with the wrong freight. He seemed to be filling the position of keeping trespassers off of the right of way and depot. His duty was to watch those cars in the yard, see that there were no goods taken from them, and that the proper parties would get it; and also about the depot, handling freight, to see that everything went on right. I do not know that he would see about loading out freight and letting· people have freight and express; they had a warehouseman to do that. If there was freight lying at the depot, and any person came to take it away, it would be his duty, if he saw fit—if he suspected at all his right to take it away—to ask about it and see if he was the right man to take it away. I should think that would be his business, even if I didn't know. Of course, if he was there and saw it being taken he ought to know whether the man had the authority to take it away. As to whose duty it was to be inquiring into anybody's taking freight away between six and seven o'clock, if there was nobody there but Phillips, it would be his duty."

On the evening of November 18, 1904, Hidalgo, assisted by Wright Newberry, was engaged in loading into his wagon certain freight° which was lying on the defendant's platform at its depot at Saratoga, which he intended to haul to Batson the next day. Just before dark, when all the freight except one or two articles had been loaded, Phillips approached and asked Hidalgo if he had orders to get the freight, to which the latter replied: "Yes; if I didn't I would not take it." Phillips then walked away, going down by the side of the platform; and after Hidalgo had finished loading he left Newberry with the wagon, saying he was going to Mr. Sandal's for something.

Mr. Sandal kept a boarding-house nearby, but off of defendant's right of way; Phillips and all the other employes of defendant at the depot, with one exception, boarded there. Just before supper, and when all the boarders except Phillips had assembled for the evening meal, and while Mrs. Sandal was waiting for the arrival of Phillips before announcing supper, Hidalgo walked upon the gallery where the assembled boarders were. Soon afterwards Phillips came, a few words passed between them, and Phillips shot and almost instantly killed Hidalgo. Just what took place between them was testified to by only two witnesses, Mr. Sandal and his wife. The former testified that when Phillips arrived he addressed Mr. Annear, the defendant's warehouse foreman, saying: "Will, how about that freight over there?" Annear said that that freight was all right, that he had checked out to the teamster, Mr. Hidalgo. Hidalgo, then addressing Phillips, said: "Charlie, I told you so," or "I told you it was all right." Phillips replied to him: "You are not paying me to attend to my business." Hidalgo then said: "Didn't I tell you it was all right? you must be drinking." Phillips then said: "I will show you that it is none of your business," or something to that effect, drew his pistol and fired at Hidalgo, the shot taking effect in the right nipple. Hidalgo then turned to walk away, when Phillips fired the second time, striking Hidalgo between the shoulders and killing him. Mrs. Sandal did not see the parties until the shooting began, but detailed the following conversation which she heard. She testified that Phillips, addressing Annear, said: "There is a wagon knocking around over there; I don't know anything about it; what about it, Will?" Annear replied: "It is all right." Hidalgo then said: "I told you so, Charlie; I told you it was all right." Phillips replied: "I am paid to attend to my business," and Hidalgo said: "It might pay you to attend to your business; you act like a drunk man; you have acted like one all day." Phillips then said: "Well, I'll show you whether I am drunk." She then heard Hidalgo say, "Never mind about that gun, son." The shooting followed immediately. It was shown that Hidalgo had been on Sandal's gallery a few minutes when Phillips came. It was further shown that Phillips was considered a "drinking man," and that he seemed to be drinking and quarrelsome on that day, and was not pleasant with the other boarders at the table. His reputation for peace and quietude was not good.

Appellant's several assignments of error are addressed to the action of the court in instructing a verdict for defendant. We are of the opinion that the assignments are without merit. Whether, in any event, the defendant would be liable for injuries resulting in death which were wilfully inflicted by its employe, it is clear that such injuries must have been inflicted by the servant in the line of his duty and in pursuance of his master's business. When the servant turns aside, for however short a time, from the prosecution of the master's work and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, whether in doing so he is actuated by malice or ill-will or a desire to play a harmless prank, there is no principle which charges the

master with responsibility for such action. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas, 136; International & G. N. R. Co. v. Cooper, 88 Texas, 610; International & G. N. Ry. v. Anderson, 82 Texas, 520.

The testimony in this case shows that it was a part of Phillips' duty under his employment to ascertain whether the freight being loaded by Hidalgo into his wagon had been authorized by the proper authorities, and his approach and inquiry of Hidalgo in that regard was an act clearly, we think, within the scope of his duties and in the accomplishment of the object for which Phillips was employed. Hidalgo's reply apparently satisfied him, for without protest he turned away, leaving Hidalgo to complete the loading. It may be true, and doubtless is, that in speaking to Annear about the matter at Sandal's house to satisfy himself that Hidalgo's statement to him was true, he was still acting for the master and within the scope of his employment. What further passed—the colloquy between himself and Hidalgo, and the shooting of the latter—clearly was not in discharge of any duty he owed to his employer, nor in furtherance of any object his employment was intended to accomplish, and therefore his acts were not such as to visit upon the defendant any responsibility for the consequences which ensued. The principles involved in this appeal are fully discussed in the cases cited. It follows that the court did not err in instructing a verdict for the defendant, and the judgment of the court below is affirmed.

*Affirmed.*