## A. B. C. STORES, Inc., v. BROWN.

### No. 3091.

Court of Civil Appeals of Texas. Beaumont.

May 13, 1937.

Boyles & Atkinson, of Houston, for appellant.

C. W. Wiedemann, of Beaumont, for appellee.

COMBS, Justice.

Noah Brown, a customer, was assaulted by Robert Davis, an employee of the A. B. C. Stores, Inc. He filed this suit against the company seeking damages in the sum of $5,000 for alleged injuries resulting from the assault.

Plaintiff's petition charges that his injuries were maliciously and willfully inflicted upon him by the employee Davis, without just excuse or provocation; that said assault was made with the implied authority of the defendant in that defendant's manager, David Cammack, under whom Davis worked, was present and did not interfere or attempt to prevent the assault.

Briefly stated, the evidence, so far as material, was: The defendant company operates a grocery store on Calder avenue in Beaumont. The store is a serve yourself type, in which the customer selects his purchases and presents them to a cashier, who determines the amount and collects the purchase price. Robert Davis was employed by the defendant as a cashier. On the occasion in question the plaintiff Brown, a negro, went to the store and selected several articles and carried them to Davis to be checked. An argument ensued between Davis and Brown as to the amount of the purchase. Brown testified that Davis called him a vile name, whereupon he (Brown) said: "Well you keep the groceries and I will keep my money." Davis denied that he cursed or abused Brown, but it is not disputed that Brown left the store without the groceries and Davis followed him to his car, which was parked outside. The argument was continued and Brown got in his car and started to drive away. Davis testified that Brown stuck his head out of the car window and called him a vile name, whereupon

he (Davis) got on the running board of Brown's car, which had begun to move, and attempted to strike him with his fist. He struck a window of the car, breaking the glass and cutting his hand. As the car was gaining speed, Davis jumped off the car and returned to the store. Brown testified that he drove about half a block and decided to go back to the store and complain to the manager, Mr. Cammack, about Davis' treatment of him. Cammack was in the back of the store checking in a delivery of milk from the deliveryman. Brown testified that when he got inside he saw Mr. Cammack and Davis in a small room which was partitioned off with a lattice talking, and that as he got within a few steps of them Davis rushed out of the door of the room and met him, and struck him in the face with brass knucks, or some blunt instrument, knocking him down; that Davis then grabbed a small two-wheeled truck and struck him with it, inflicting injuries to his side and foot. Mr. Cammack in the meantime rushed out and separated them, and then directed the negro porter to get some vaseline and a towel and administer first aid to Brown, which was done.

Both Davis and Cammack denied that they were talking when Brown came up, or that Cammack knew prior to the assault about the argument between Davis and Brown. Davis had been employed by the defendant company four years and had never before had any argument or trouble with a customer.

The trial was to the court and resulted in a judgment in favor of Brown for $350, from which judgment the defendant has appealed.

### Opinion

It is our conclusion that no liability was shown. Under all of the evidence the assault on the plaintiff by the defendant's cashier, Davis, was wholly outside the scope of Davis' employment. Davis was not acting in furtherance of any duty owed by him to his employer, but was actuated wholly by a spirit of anger or resentment toward the plaintiff, a matter personal to himself. As we view the testimony there is not the slightest evidence that defendant's manager, Cammack, authorized the assault, nor does the record support the conclusion that Cammack stood by and acquiesced in the assault. Under all of the testimony he did not know of the argument between Brown and

Davis, or have any advance warning that the assault was about to be made. When Brown appeared in the rear of the store, Davis simply rushed toward him and struck him. Cammack caused Davis to desist from the attack. It was over quickly. There is no showing that Cammack could have acted any more promptly or effectively than he did.

In Home Telephone & Electric Co. v. Branton, 7 S.W.(2d) 627, 629, Chief Justice Hickman, speaking for the Eastland Court of Civil Appeals, said: "The question of liability of a master for assault committed by his servant has been the subject of many able opinions by the courts of our state. These opinions have so clarified the question as that the liability vel non of a master in a given case should be determined clearly and certainly. The rule of respondeat superior applies, and renders a master liable to a third person assaulted by a servant of the master while acting within the scope of the servant's employment. The rule arises out of the relation of superior and subordinate, and must necessarily be coextensive with that relation and cease when the relation ceases. Whenever the very nature of the employment expressly or impliedly authorizes the servant to use force, and in the exercise of that authority he negligently or willfully uses more force than is necessary to further his master's business, and thereby injures a third person, the master is clearly liable. On the other hand, where the act of the servant is not in the furtherance of the master's business, or for the accomplishment of the object for which he was employed, but is performed as a resentment of insults, or in the furtherance of personal animosities of the servant, the master is not liable." Numerous authorities are cited in support of the statement of the rule. See, also, Horwitz v. Dickerson (Tex.Civ.App.) 25 S.W. (2d) 966.

In the case before us it is apparent, we think, that Davis' assault on Brown did not come within the rule of liability; or even if it be assumed that the original dispute between Brown and Davis with reference to payment for the groceries did originate in the line of Davis' duty to his employer, and was in furtherance of the employer's business, still the assault and battery which forms the basis of this suit certainly did not. The assault occurred subsequent to the argument and after the

plaintiff, Brown, had left the defendant's premises and returned. In returning to the store Brown did so, not to trade, but on a personal mission to satisfy his resentment against Davis, aroused by Davis' alleged mistreatment of him and for the purpose of reporting it to the manager, Cammack. In doing that it was not necessary for him to have any dealings at all with Davis, and the assault and battery which followed, whether provoked or unprovoked and willful, was a personal matter between Davis and Brown having no relation to the employer's business, and the defendant is in no respect liable to the plaintiff for it.

The fact that Davis' assault on the plaintiff did not occur in the line of his duty to his employer, but arose out of a matter personal to himself, fully distinguishes this case from such cases as Wells Fargo & Co. Express v. Sobel, 59 Tex.Civ.App. 62, 125 S.W. 925, and Gulf, C. & S. F. Ry. Co. v. Cobb (Tex.Civ.App.) 45 S.W. (2d) 323, cited by the appellee.

It follows from what we have said above that the judgment of the trial court awarding the plaintiff damages should be reversed and rendered in favor of the appellant, and it is so ordered.