M SYSTEM FOOD STORES, Inc., Appellant,

v.

Lawrence SMITH, Appellee.

No. 10414.

Court of Civil Appeals of Texas.

Austin.

June 27, 1956.

Rehearing Denied Aug. 8, 1956.

Kerr & Gayer, San Angelo, McDonald & Shafer, Odessa, for appellant.

W. J. Durham, Dallas, for appellee.

HUGHES, Justice.

Lawrence Smith, appellee, sued M System Food Stores, Inc., Melvin James and others for damages, actual and exemplary, resulting from an alleged assault and battery and an unlawful arrest.

Trial was to a jury which made unfavorable answers as to both M System and James, however, appellee requested that no judgment be rendered against James but only against M System. This request was granted.

The validity of the judgment primarily depends upon the troublesome question of whether or not James, the employee of M System, was acting within the scope of his employment when the incidents out of which this suit arose occurred.

We have concluded that he was not and that appellant's various motions presenting the negative of this contention should have been sustained.

M System owns a number of grocery stores one of which is located on South Chadbourne Street in San Angelo and of which Mr. Lloyd Morris is manager.

Melvin James is a regularly employed police officer of the City of San Angelo. He is a part time employee of M System. Regarding his duties Mr. Morris testified:

"Q. And what were his duties, Mr. Morris please? A. His duties were to catch any shoplifters or anyone that was carrying out something without paying for it.

"Q. Did he have any other duties? A. No, that was all."

Mr. James testified:

"Q. Now, I believe you were employed there to watch and protect the property of the Defendant, M System? A. That's right.

"Q. And that was what you were doing the day that you struck Smith with the pistol? A. Yes.

"Q. You were there watching and protecting the property of the M System store? A. Yes."

There is no other evidence regarding the duties of Mr. James.

It is undisputed that Mr. James was on duty under his employment with M System when the following incidents occurred:

About four o'clock in the afternoon of December 1, 1951, Mr. James apprehended a shoplifter, Mrs. Lilly Belle Johnson, in the store. He followed her to the street, arrested her and took her through a side door and upstairs to Mr. Morris' office. This office contained mostly empty boxes and crates and little, if any, merchandise.

Mr. Morris was in his office and Mr. James reported the affair to him. Mrs. Johnson returned the stolen goods and signed a confession admitting her guilt. Mr. James then returned to his position in the office from which he could observe the people in the store. Mrs. Johnson and Mr. Morris were conversing.

We quote now from the testimony of Mr. James:

"Q. All right. Now, you were back at the window looking down. Tell us what is the next thing that happened,

that you observed. A. The next thing I observed, the next thing that happened, I heard a noise.

"Q. What kind of a noise was that? A. Well, it was—sounded like people running, coming up that small stairway up to where we were.

"Q. Did it sound like one person or more than one person? A. No, it sounded like more than one.

"Q. All right. What is the next thing you did or what was the next thing that happened? A. I turned around—I was facing west and the stairway is to my left (indicating)—I turned around, and the way the boxes were stacked the passage was very narrow between me and the boxes. Lawrence Smith and Johnson—'Cooter', I know him by, and Lawrence Smith's wife,—they didn't walk up those stairs, they ran up there.

\*　　\*　　\*　　\*　　\*　　\*

"Q. How did they enter the room, the little office room where you were and Mr. Morris was? A. How?

"Q. In what manner? A. They ran in it as though they—well, it's pretty hard to explain; they came up there, Mr. Smith and Cooter, they ran up there and ran by me, that is, Mr. Smith did, Cooter didn't get by me, he stopped just before he got there; and they were running as if trying to catch something, they were really in a hurry.

\*　　\*　　\*　　\*　　\*　　\*

"A. I remember Cooter saying that she didn't steal it; that he knew she didn't steal it. I asked him how did he know, he wasn't there.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you ever at any time accuse Mr. Smith of stealing anything when you were up in that office? A. No, I never did.

"Q. Did you at any time accuse Mrs. Smith of stealing anything? A. No, sir.

"Q. Did you at any time tell Mrs. Smith she was under arrest or try to restrain her from doing what she wanted to do? A. I told her she wasn't under arrest.

"Q. Whom did you place under arrest at that time? A. Lilly Belle, Cooter and Lawrence Smith.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you ask Mr. Smith to come up in the office? A. No, I did not.

"Q. At what time, if you did, at what point in there, did you tell Mr. Smith that you were a police officer? A. Just before I hit him with my pistol.

"Q. What were the circumstances that you told him that you were a police officer? A. I had my badge inside of my billfold and I opened it up and showed him, and my commission card was in a little, one of those little identification, where you can see through.

"Q. Did that have any effect on Mr. Smith's action? A. No, sir.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now, the Defendant, M System Stores, says in its pleading and allegation too, that when you struck Mr. Smith that you had completed your connection with the arrest of this woman and getting of the merchandise; that is true, isn't it? A. Yes.

"Q. Isn't that true? A. That's right.

"Q. That is right. Then after you had completed your connection, I believe you walked over and started to performing your duties by watching and protecting the property of the Defendant, M System, is that right? A. That's right.

\* \* \* \* \* \*

"Q. And the only time you arrested her (Mrs. Johnson) was out on the street when you walked up to her and apprehended her, you placed her under arrest? A. Yes.

"Q. Then, Mr. Smith, when he came up there was no arrest going on of this Johnson woman, was there? A. No.

"Q. She had already been arrested, the arrest had been completed; so Mr. Smith was not interfering with your arresting the Johnson woman? A. He was interfering with the police officer.

\* \* \* \* \* \*

"Q. Thank you; and I believe you said that Smith had committed no other offense in your presence; he hadn't stolen any property or anything? A. No, he hadn't stolen any property."

The details of the affray between Mr. James and appellee are fragmentary. We quote the testimony of Mr. Morris:

"A. No, actually, all I know about the ruckus there was when James said whatever he said, I didn't hear it, but whatever he said, and Lawrence said 'I wasn't talking to you, I was talking to Mr. Morris here.'

"Q. He said to him, 'I wasn't talking to you, I was talking to Mr. Morris?' A. That's right.

"Q. And the next thing you knew Mr. James hit him? A. That's right."

Appellee's wife testified that Mr. James had an angry look on his face before he struck appellee.

Appellee testified that he had never seen Mr. James before and that he had not cursed him.

Mr. Morris was present during the above disturbance but he did not participate in it in any way. Mrs. Smith testified that when her husband was struck that she and he both were between Mr. James and Mr. Morris.

Under these facts the jury found that Mr. James was not acting within the scope of his employment when he struck appellee but that he was acting within the scope of his employment when he arrested appellee and that such arrest was illegal.

The jury further found, aside from the damage issues, that appellee did not give aid to Mrs. Johnson in order that she might evade arrest or trial with knowledge that she had stolen property from appellant.

The evidence is clear that the duties of Mr. James insofar as M System was concerned were limited to apprehending shoplifters and that his duty in this respect had fully terminated when appellee intervened.

The intervention was with Mr. Morris, appellee stating that he was not speaking to Mr. James. Clearly, then Mr. James was not, by appellee's own admission, approached by appellee or concerned with the matter in any way except as Mr. James, on his own initiative, made it his concern.

We do not know why Mr. James hit appellee nor why he arrested him except the arrest was, perhaps, to excuse his unlawful assault. Whatever may have been his reason we can find no connection between the assault upon appellee or his arrest and the purpose for which Mr. James was employed by M System.

Both parties cite cases but their facts are so varied and so dissimilar to those found here and since the law to be applied is not in doubt we refrain from discussing them. They have been read and considered.

The judgment of the trial court is reversed and judgment is here rendered for appellant.

Reversed and rendered.