Ellis S. HUMBERT et al., Appellants,

v.

R. N. ADAMS, d/b/a R. N. Adams Construction Company, Appellee.

No. 16485.

Court of Civil Appeals of Texas.

Dallas.

April 23, 1965.

Rehearing Denied May 21, 1965.

See also Tex.Civ.App., 361 S.W.2d 458.

Earl Luna, Dallas, Waggoner Carr, Atty. Gen., and I. Raymond Williams, Jr., Asst. Atty. Gen., Austin, for appellants.

Fred T. Porter, Dallas, for appellee.

WILLIAMS, Justice.

Appeal from an order sustaining motion for summary judgment. We give the parties the same designations as in the trial court.

This suit was originally instituted in the district court of Dallas County, Texas by Ellis S. Humbert against T. L. James & Company, Inc., and R. N. Adams, doing business as R. N. Adams Construction Company seeking damages for personal injuries alleged to have been sustained by Humbert as a result of a personal encounter with one John Kelly Sears, alleged to be an employee of both defendants, and acting at the time of such altercation in the course and scope of his employment. John Kelly Sears was never made a party defendant, individually, plaintiff's sole contention of liability against defendants being that of *respondeat superior*. Humbert alleged that he was an inspector, employed by the Texas State Highway Department; that the defendants had a contract with the State of Texas for the construction of improvements on Highway

No. 175; that Sears was employed by defendants as a supervisor on the job and that the assault and battery took place at the scene of the construction work. R. N. Adams filed his plea of privilege alleging that venue as to him should be transferred to Kaufman County, Texas where he resided. The plea of privilege was sustained by the trial court and appealed to this court. In Humbert, Appellant v. R. N. Adams, d/b/a R. N. Adams Construction Company, et al., Appellees, 361 S.W.2d 458 we carefully review the testimony given at such venue hearing (such testimony being set out in our opinion, and referred to herein) and speaking through Chief Justice Dixon, arrived at the conclusion that: "The assault arose out of a personal resentment on Sears' part against Humbert. Sears was not in the course of his employment with Adams when the assault was committed. If there was any connection at all between the assault and the alleged failure of some of the materials not 'passing the specifications', that connection, as Humbert himself said, was 'something way down the line.' It was too remote to be considered a part of the assault." We therefore affirmed the trial court's judgment and the cause was removed to Kaufman County, Texas. After the transfer plaintiff filed his amended petition wherein he named R. N. Adams only as defendant.

R. N. Adams filed his motion for summary judgment in the District Court of Kaufman County, supporting same with transcript of the testimony of Humbert given at the plea of privilege hearing and also the oral deposition of John Kelly Sears, Adams' employee. Humbert filed his answer to Adams' motion and attached thereto his affidavit which added nothing to his testimony previously given on the venue hearing. According to the briefs the State of Texas and the Texas State Highway Department both intervened in the suit (although there is no plea of intervention shown in the transcript) claiming a subrogation right to recover, in the event Humbert recovered, for certain compensation

benefits and hospital expenses incurred by the State of Texas and the Texas State Highway Department, the employer of Humbert. Intervenors also filed an answer to the motion for summary judgment and attached thereto an affidavit of one R. O. Henley, resident engineer in charge of construction of the highway where the altercation occurred. He stated that Mr. Sears was directly in charge of the flexible base on the highway project; that he was an employee of R. N. Adams Company and worked directly under R. N. Adams as far as policy matters were concerned. The trial court heard the motion for summary judgment and sustained same thereby rendering judgment that plaintiff and intervenors take nothing against the defendant.

OPINION

The sole question presented by this appeal is whether the affidavits, testimony and deposition raised a genuine issue of fact vel non as to whether John Kelly Sears was acting within the course and scope of his employment for R. N. Adams at the time he committed the assault on Humbert. We have already held that the testimony of Humbert given at the plea of privilege hearing in Dallas County demonstrated that he was not acting within the course and scope of his employment for Adams. However, the trial court in Kaufman County had before it additional facts in the form of Sears' deposition and the affidavits of Humbert and Henley when the motion for summary judgment was decided. Therefore, we must consider this additional evidence, as well as that heretofore studied, to determine whether same presents an issue of fact which should have been submitted to a jury.

Landmark rules govern us in our task of deciding the question presented by appeal from the summary judgment order. As we stated in Seale v. Muse, Tex.Civ. App., 352 S.W.2d 534, if there are any doubts existing concerning the propriety of the granting of the motion for summary judgment such doubts must be resolved

against the moving party. The movant has the burden to conclusively negative the existence of any genuine issue in regard to controlling facts. A defendant moving for a summary judgment must assume the negative burden of showing, as a matter of law, that the plaintiff has no cause of action against him. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, affirming this court in 243 S.W.2d 220.

The evidence relied upon by the district judge to sustain the motion for summary judgment is clear in all material respects. R. N. Adams had a contract with the Texas State Highway Department to do certain highway construction work. John Kelly Sears was general superintendent for Mr. Adams on the job in question. It was his duty to see that the work was carried on according to the plans of the Highway Department. Gene Kennedy was his immediate superior. Ellis S. Humbert was the inspector for the State Highway Department on the job. Sears had known Humbert for several years. The two men had never had any difficulties. On November 17, 1960 Sears had a conversation with Humbert pertaining to the gradation of the flexible base. Humbert had complained about the gradation, meaning the size of the different materials used in the base. Humbert told Sears that there was an error in gradations and suggested that Sears get in touch with Mr. Henley, the resident engineer on the job, and talk with him about it and also suggested that Sears shut down delivery of materials to the job until the matter could be corrected. There was no animosity between the two men at all on this occasion. Following the conversation Sears left and talked to Mr. Henley. While he was talking to Henley, Humbert approached and the three of them discussed the problem and decided to continue the haul temporarily. Sears agreed to correct the gradation problem. Sears then left and went and talked to Mr. Kennedy about the problem. During this conversation Kennedy told Sears that Mr. Humbert had already talked to him and had made reference to the fact that Sears had talked to Henley and related that Humbert had said: "Well, I'd better go down there, he will go down there and tell him a bunch of damn lies." Sears left Mr. Kennedy and some time later Mr. Humbert approached him. Sears asked Humbert why he made that remark to Mr. Kennedy and Humbert said: "Well, he's just like you, he's a god damn liar. I didn't say it." Thereupon Sears hit Humbert with his fist and jumped on top of him. Humbert also hit Sears. This altercation took place on the job site about two and a half hours after the initial conversation concerning the gradation. As a result of the fight Humbert sustained serious personal injuries. When asked to tell what led up to the fight Sears said: "Well, he called me a god damn liar." "Question: Did he tell you that to your face?" "Answer: Yes." When Humbert was asked by the Court: "What were you and Mr. Sears fussing about; what was the dispute or fight about?" Humbert responded: "He seemed to think that I had called him a liar." Again Humbert was asked: "Well, I understood you to say that the fight took place over the fact that he said that you had called him a liar; isn't that right?" "Answer: That's right." Sears, in his deposition, stated that there was no anger or animosity evidenced at their initial meeting concerning the gradation; but that if Humbert called him a liar he could think of nothing else that caused him to do so other than their discussions concerning the gradation of the material several hours before.

■ The general rule that it is not ordinarily within the scope of a servant's authority to commit an assault on a third person because such an assault is usually the expression of personal animosity and is not for the purpose of carrying out the master's business, is restated by the Supreme Court in Smith v. M System Food Stores, Inc., 156 Tex. 484, 297 S.W.2d 112:

"To be within the scope of employment 'the conduct must be of the same general nature as that authorized or

incidental to the conduct authorized.' * * * In Home Telephone & Electric Co. v. Branton, Tex.Civ.App., 7 S.W.2d 627–629, in an opinion by our present Chief Justice [Judge Hickman], then on the Court of Civil Appeals, the rule was said to be that: ' * * * where the act of the servant is not in the furtherance of the master's business, or for the accomplishment of the object for which he was employed, but is performed as a resentment of insults, or in the furtherance of personal animosities of the servant, the master is not liable.' See also A. B. C. Stores v. Brown, Tex.Civ.App., 105 S.W.2d 725; * * * J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S.W.2d 359; Texas & Pac. Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059."

Plaintiff and intervenors argue forcefully that the facts presented to the trial court create issuable facts relating to course of employment within the rule announced in Gulf, C. & S. F. Ry. Co. v. Cobb, Tex.Civ. App., 45 S.W.2d 323; Central Motor Co. v. Gallo, Tex.Civ.App., 94 S.W.2d 821; Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880; Thompson v. Hodges, Tex. Civ.App., 237 S.W.2d 757; and Texas & Pacific Ry. Co. v. Crown, Tex.Civ.App., 220 S.W.2d 294. We are unable to agree. We think that each of these cases is distinguishable on the facts. One of the chief distinguishing features is the element of timing. If the assault is committed simultaneously or so closely connected with the work being done by the employee both acts are treated as one indivisible tort. Illustrative is the case of Gulf, C. & S. F. Ry. Co. v. Cobb, supra, where an engine foreman for the railroad company assaulted appellee by shooting him with a pistol during switching operations. The court, in affirming judgment, said, *inter alia:*

"Such acts are imputable to the master, under the doctrine of respondeat superior, and in accordance with the general principles that the master is liable for any act of the servant done within the scope of his employment, as well as for any act of the servant which, if isolated would not be imputable to the master, *but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as being one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act."* (Emphasis added)

However, we think the facts in this case are such as to be controlled by the decisions in Texas & Pacific Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236; Home Telephone & Electric Co. v. Branton, Tex.Civ. App., 7 S.W.2d 627; Nat'l Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W. 2d 828; Norris v. China Clipper Cafe, Tex. Civ.App., 256 S.W.2d 664; Smith v. M System Food Stores, Tex.Civ.App., 293 S.W. 2d 215, affirmed 156 Tex. 484, 297 S.W.2d 112; A. B. C. Stores v. Brown, Tex.Civ. App., 105 S.W.2d 725; and Jax Beer Co. v. Tucker, Tex.Civ.App., 146 S.W.2d 436.

The case of Texas & Pacific Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236 involves very similar facts and emphasizes the time element. In that case Houghland, the defendant's employee who committed the assault on Hagenloh, became incensed at Hagenloh because the latter had called him a liar. At the time Houghland was engaged in trying to find property missing from luggage. The Supreme Court held that Houghland, in striking Hagenloh, was not carrying out the railroad's business, but was carrying on an enmity that had theretofore developed between him and the plaintiff, even though same did have to do with his employment.

In Jax Beer Co. v. Tucker, Tex.Civ.App., 146 S.W.2d 436, Justice Young, speaking for this court, discussed a factual situation

somewhat comparable and accented the time element. As he said:

"According to plaintiff's own testimony, argument about the overcharge in the store had been concluded, and the later sidewalk conversation appears to have been a casual one, personal only to them, Dyer then being engaged in nothing pertaining to his required duties. *Our research on the subject discloses that, whenever warranted by the facts, Texas courts uniformly draw a line of demarcation at the interval when a given scope of employment ceases and the servant's own responsibility begins.* 'When the servant turns aside, for however short a time, from the prosecution of the master's work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, whether in doing so he is actuated by malice or ill will * * *, there is no principle which charges the master with responsibility for such action.' Hidalgo v. Gulf, C. & S. F. R. Co., 60 Tex.Civ.App. 433, 128 S.W. 683, 685 (writ refused)." (Emphasis added)

We place emphasis upon the fact that the record does not reveal any evidence of animosity or anger engendered or displayed in any way between Mr. Sears and Mr. Humbert as a result of the discussion between the two men having to do with the performance of the work on the highway in question. This discussion appears to have been conducted in a businesslike manner and both parties appeared to be cooperative to the end that the matter could be adjusted amicably. It was only after this discussion had been had, and in an interval of time estimated to be two and a half hours, that Sears heard that Humbert had accused him of being a liar and, confronting Humbert, Humbert called him a "god damned liar" which immediately led to the fight.

■ The fact that the direct and proximate cause of the encounter which led to plaintiff's injuries was a purely personal one and not the remote occurrence dealing with the work is conclusively evidenced by plaintiff's own testimony:

"Q. What were you and Mr. Sears fussing about; what was the dispute or fight about?

"A. He seemed to think I had called him a liar.

"Q. About what? What did you say, what did he say?

"A. Well, I don't know; when I walked up, that was the first thing he said, he started swinging. I don't know what he said might have started it, *something way down the line that happened earlier that day;* I don't know." (Emphasis supplied)

It is further uncontradicted, both by the testimony of Humbert, his affidavit, and the testimony of Sears, that the fight arose out of the fact that Humbert said—or at least Sears had been told that Humbert had said—that he would tell a bunch of "damned lies".

■ Consistent with the authorities above quoted and in the light of the clear and convincing evidence concerning the facts surrounding the unfortunate assault, we hold that no issue of fact on the question of liability, *vel non,* on the part of Adams is presented and therefore the trial court correctly sustained the motion for summary judgment.

The judgment of the trial court is

Affirmed.